**In re Carlos A. JEFFERSON, Debtor.**

**No. 01–64996.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Aug. 4, 2003.

Carlos A. Jefferson, Judith M. McInturff, Esq., Columbus, OH, for Debtor.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

### OPINION AND ORDER ON DEBTOR'S MOTION TO MODIFY HIS CONFIRMED PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the debtor's motion to modify his confirmed plan. The Chapter 13 trustee objected to the motion, and the Court heard the matter on April 15, 2003.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

The debtor filed his Chapter 13 case on December 21, 2001. His Chapter 13 plan, confirmed on March 13, 2002, provided for payments of $1,772.00 each month for 12 months and $2,300.00 each month for the remaining months. He also is to make lump-sum payments of $7600.00 in year one and $5,000.00 each succeeding year of the plan. In addition, the plan requires payments of $3,209.34 to the trustee each month to maintain mortgages against his five rental properties and his residence. One of those rental properties was to be sold and the sale proceeds additionally contributed to the plan. Three additional rental properties were to be surrendered to the respective mortgage holders. A mortgage on the debtor's ex-wife's residence, no longer owned by the debtor, but for which he still had liability on a mortgage note, was to be paid directly by his ex-wife.

In his schedules, the debtor valued each of his nine parcels of real estate in excess of their respective mortgage obligations.

Based upon the amounts of equity established by those values, his bankruptcy estate was considered to be solvent and allowed unsecured claims were to be paid 100% plus interest.

On March 4, 2003, the debtor filed a motion seeking to modify his confirmed plan. Specifically, he seeks to keep his monthly payments at the initial level of $1,722.00 plus conduit mortgage amounts now at $2,629.34, sell one of his vehicles and contribute those proceeds to his plan, and lower the dividend to allowed unsecured claimants to 52%. He further wants to surrender, in full satisfaction of the claims against it, one of the five rental properties being paid through the trustee. The property originally contemplated to be sold is now thought not to be able to contribute any funds to the plan beyond satisfaction of the debt against that property.

In support of his motion, the debtor asserts that he had overestimated the value of these rental properties and that they were not producing income sufficient to permit him to increase his monthly payments. He further states that the scheduled values of these properties at confirmation were much too high and that a 100% dividend was, therefore, not required. In support of his motion, the debtor has now had appraisal reports made for each of the questioned properties.

The Chapter 13 trustee objected to the debtor's proposed modification. The bases for that objection are: (1) the proposed modified plan will not satisfy the best interests of creditors' test set forth in 11 U.S.C. § 1325(a)(4), as incorporated by § 1329(b)(1); and (2) the modified plan would extend more than 60 months from the first payment date in violation of 11 U.S.C. § 1329(c).

Prior to confirmation of his plan in 2002, the debtor had only his residence appraised. Because his plan offered a 100% dividend to unsecured claims, the local rules of this Court did not require an appraisal of each of his real estate holdings. The values ascribed to his rental properties were based upon the debtor's opinions of value. Those opinions in some cases were influenced by appraisals performed by out-of-town lenders in connection with a proposed refinancing. The debtor now asserts that some of his opinions were wrong. He offers appraisals and evidence of subsequent improvements to those properties to demonstrate that, even with those improvements, the properties appraised in 2003 for less than the value at which they were scheduled in December of 2001.

The Court finds that there are three primary issues raised by the debtor's motion, the Trustee's objection, and the Court's duty to independently assess the appropriateness of proposed modifications to confirmed plans.

### 1. *The Length Issue.*

■ The debtor admits that the modification, as proposed, will cause the term of the plan to exceed 60 months in violation of 11 U.S.C. §§ 1322(d) and 1329(c). On that ground, the motion for modification cannot be sustained.

### 2. *The Surrender Issue.*

■ The debtor's modification proposes to surrender one parcel of real property in full satisfaction of the lien claims against it. Such treatment is prohibited in this circuit by the ruling in *Chrysler Financial Corp. v. Nolan (In re Nolan),* 232 F.3d 528 (6th Cir.2000). Further, this Court believes that eliminating a creditor's

right to a deficiency claim for any portion of its debt not satisfied by liquidation of its collateral, absent the existence of a non-recourse clause not argued here, is effectively a classification of the creditor's unsecured claim. Such a classification would be unfairly discriminatory and would violate 11 U.S.C. §§ 1322(b)(1) and 1329(b)(1). Without the express consent of the creditor so affected, the Court will not approve such a plan provision. Therefore, that part of the plan modification cannot be approved.

### 3. *The "Best Interest of Creditors" Issue.*

■ A post-confirmation plan modification must satisfy certain confirmation tests. Section 11 U.S.C. § 1329(b)(1) mandates that all subsections of § 1325(a) apply to any post-confirmation modification. Specifically, Section 1325(a)(4) requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date". Section 1329(b)(2) then establishes that "the plan as modified becomes the plan...".

Satisfaction of the "best interests test" may, as in this case, require the Court to determine the time at which the liquidation analysis must be performed.

The few courts that have considered this matter do not agree as to whether the applicable date for determining the liquidation test for a post-confirmation modification is the date the petition was filed, the effective date of the original plan, or the effective date of the plan, as subsequently modified.[1]

---

1. Compare *In re Forbes,* 215 B.R. 183 (8th     Cir. BAP 1997) with *In re Barbosa,* 236 B.R.

After a review of existing case law, consideration of the language of § 1329(b) and 1325(a)(4) and the legislative history[2] for the modification provisions, the Court determines that the appropriate date for performing the liquidation analysis required by §§ 1329(b) and 1325(a)(4) is the effective date of the modified plan. *See In re Barbosa*, 236 B.R. 540 (Bankr.D.Mass.1999).

This finding requires the Court to examine the relevant facts as they are presented in connection with this proposed modification. This finding may raise difficult legal issues in some cases about the extent to which appreciated or depreciated property or property acquired post-confirmation is property which must be taken into account for purposes of the liquidation analysis. Those difficulties, however, were not raised here and do not change the Court's determination that the date for such consideration is the effective date of the plan, as modified, rather than the effective date of the plan as originally confirmed or some other date.

The Court now will determine if the real property appraisals presented through an expert witness at the hearing and the personal property values set forth in the schedules establish that a 52% dividend will meet the "best interest of creditors'" test as of the effective date of the modified plan, as proposed. If the other bars to confirmation of that modification plan were not present and if the modified plan would become effective within a reasonable time hereafter, the 52% offered would satisfy the test. The appraisal values presented appear reasonable and, when combined with the debtor's other non-exempt assets, do not require a higher dividend. There were no issues raised about any subsequently acquired assets.

Based on the foregoing, the debtor's motion to modify his confirmed plan is **DENIED.**

**IT IS SO ORDERED.**

---

540 (Bankr.D.Mass.1999), *aff'd* on other grounds, 243 B.R. 562 (D.Mass.), *aff'd* 235 F.3d 31 (1st Cir.2000).

**2.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977), U.S.Code Cong. & Admin. News, pp. 5787, 6386, and 6387.